UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANTE LJUBICIC, <br><br> Plaintiff <br><br> v. <br><br> INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, <br><br> Defendant | Civil Action No. 21-1483 (CKK) |

MEMORANDUM OPINION
(August 2, 2022)

Plaintiff Ante Ljubicic, who proceeds *pro se*, brings this action against the International Brotherhood of Electrical Workers Union ("IBEW"), claiming that IBEW wrongfully denied him a pension benefit. He also alleges that he was "fraudulently misled" by IBEW. Pending before the Court is IBEW's [19] Motion for Summary Judgment, filed on behalf of itself and IBEW's Pension Benefit Fund ("PBF"). IBEW argues that it reasonably determined that Plaintiff was ineligible for benefits and that Plaintiff's fraudulent misrepresentation claim is preempted by the Employee Retirement Income Security Act of 1974" ("ERISA").

Upon review of the pleadings,[1] the relevant legal authority, and the record as a whole , the Court **GRANTS** IBEW's [19] Motion for Summary Judgment and dismisses this case.

---

[1] The Court's consideration has focused on the following:
- Plaintiff's Statement of Claim ("Compl."), ECF No. 2-1;
- Statement of Points & Authorities in Support of Defendant' Motion for Summary Judgment ("Def.'s S.J. Mot."), ECF No. 19-1;
- Plaintiff's Response to the Defendant's Statement of Points & Authorities ("Pl.'s Opp'n"), ECF No. 20;
- Defendant's Reply to Plaintiff's Response to Defendant's Statement of Points & Authorities ("Def.'s Reply"), ECF No. 21; and
- Joint Appendix ("JA"), ECF No. 22, including the Administrative Record ("AR"), ECF No. 22-1.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

## I.   BACKGROUND

### A. IBEW's Pension Benefit Fund

The International Brotherhood of Electrical Workers Union ("IBEW") is a labor organization, which represents approximately 775,000 active members and retirees across "a wide variety of fields, including utilities, construction, telecommunications, broadcasting, manufacturing, railroads, and government." Def.'s S.J. Mot. at 2 ¶ 2. IBEW's Pension Benefit Fund ("PBF") is a distinct legal entity that pays pension benefits to eligible IBEW members. *Id.* ¶ 3. PBF is "wholly funded by the dues of IBEW members and earnings thereon" and so is a "union-dues financed 'employee pension benefit fund,' as defined [in] Section 3(2) of ERISA." *Id.*

To be eligible for a "normal pension" from PBF, an applicant must have been a "member of the IBEW in continuous good standing with five (5) or more years immediately preceding his or her application, who has attained the age of sixty-five (65) years[.]" JA Doc. 6, PBF Summary Plan Description at 2. Furthermore, "[i]t is a condition for admission to pension benefits . . . that the member shall not perform any work of any kind coming under [IBEW's] jurisdiction either for compensation or gratis for anyone." JA Doc. 2, IBEW Const. Article XI Pension Benefit Fund § 6(d), ECF No. 22-2.

When an IBEW member in good standing applies to receive his or her pension, PBF's plan administrator makes an "initial determination" of the applicant's eligibility. Def.'s S.J. Mot. at 3–4 ¶ 4; *see also* JA Doc. 6, PBF Summary Plan Description at 6–7. The current plan administrator is IBEW's International Secretary-Treasurer Kenneth Cooper ("IST Cooper"). *Id.* at 1. If the plan administrator determines that the applicant is ineligible for pension benefits then he or she must "inform the claimant of the determination in writing," explain "the reasons in layman's terms with

specific references to pertinent Plan provisions on which the determination is based," describe "any additional material or information necessary for the claimant to perfect the claim" with an explanation of "why such material or information is necessary," and "provide a description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA Section 502(a)." *Id.* at 6–7.

A claimant may appeal the IST's denial of benefits to IBEW's International Executive Council ("IEC"). *Id.* at 7. The IBEW Constitution grants the IEC "discretionary authority to determine eligibility for benefits" and specifies that "the decisions of the [IEC]" regarding "cases of eligibility for, and computation of the amount of, benefits shall be final and binding[.]" JA Doc. 2, IBEW Const. Article XI Pension Benefit Fund § 6(h); *see also* JA Doc. 6, PBF Summary Plan Description at 12 ("The IEC is also granted discretionary authority to determine eligibility for benefits."). On appeal to the IEC, the claimant is "given the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits." JA Doc. 6, PBF Summary Plan Description at 7. The IEC considers the appeal at its "next regularly scheduled meeting," and must issue a "final decision in writing within five (5) days of the determination." *Id.* For an adverse determination, the IEC must "provide the reasons and reference the Plan's provisions on which the adverse benefit determination is based" and notify the claimant "that he or she has the right to bring a civil action under ERISA Section 502(a)." *Id.*

### B. Plaintiff's Applications for Pension Benefits

Plaintiff Ante Ljubicic became a member of IBEW in February 1979 and paid dues through February 2020. Def.'s S.J. Mot. at 1 ¶ 1; AR 2, 3; *see also* Compl. at 3. During this period, Plaintiff was an "A" member in continuous good standing. Def.'s S.J. Mot. at 1 ¶ 1; AR 4.

Plaintiff first applied for a "normal retirement pension from the IBEW Pension Benefit Fund (PBF) in December 2018." *See* Def.'s S.J. Mot. at 4 ¶ 1; AR 52–53. Plaintiff indicated in his application that he had last "physically" worked in the "electrical industry" for North Shore Towers in June 1990. AR 52. He also indicated that he was "currently self-employed" as a mechanical contractor." AR 52. The business address listed on his application was associated with "Plumbing & Piping Unlimited Contractor." *See* AR 51. State records indicate that he held active "heating, piping, and cooling" contractor credentials. AR 45–47.

In a letter dated March 6, 2019, IST Cooper denied Plaintiff' application. AR 43. The denial letter explained that because Plaintiff was "currently self-employed as a mechanical contractor," he was not eligible for pension benefits pursuant to Article XI, Section 6(d) of the IBEW Constitution, which states: "The member shall not perform any work of any kind coming under the IBEW's jurisdiction either for compensation or gratis for anyone." AR 43. IST Cooper's denial letter further advised Plaintiff to contact PBF again "[o]nce you are completely retired from all work in the electrical industry." AR 43.

IST Cooper's affidavit provides additional context for his determination that Plaintiff was not eligible for pension benefits when he first applied in late 2018. *See* Affidavit of International Secretary-Treasurer Kenneth W. Cooper ("Cooper Aff.") ¶ 25, ECF No. 19-2. According to IST Cooper, a "mechanical contractor can be expected to install, maintain, and repair systems such as heating and cooling systems," which are tasks involving "electrical calculations" such as "reading and interpreting electrical schematics; troubleshooting of the electrical powering systems, air handlers, pumps and condensing units and similar electrical connections; and the use of electrical tools such as multimeters." *Id.* ¶ 17. He avers that this "type of work is routinely performed by IBEW members and is taught to Inside and Residential Wireman apprentices in IBEW

4

apprenticeship programs nationwide." *Id.* Because Plaintiff, at that time, held licenses as a "Heating, Piping & Cooling" contractor and as a "Plumbing & Piping" contractor, IST Cooper concluded that his work as a mechanical contractor fell within the scope of IBEW's jurisdiction, and so Plaintiff was not eligible for a PBF pension. *Id.* ¶¶ 18, 19.

Plaintiff re-applied for pension benefits in December 2019. AR 34–42. Plaintiff again indicated that he had last "physically" worked in the "electrical industry" for North Shore Towers in June 1990. AR 34. However, this time, he left blank the section on the application requesting information about whether he was "currently employed or self-employed," including a "detailed description of the type of work being performed." AR 35.

In a letter dated February 26, 2020, IST Cooper requested additional information regarding Plaintiff's employment status. AR 31. Specifically, IST Cooper asked Plaintiff to provide a "detailed description explaining [his] previous and current involvement with Plumbing & Piping Contractor Unlimited."[2] AR 31. IST Cooper indicated that Plaintiff's application would be "held in a pending status awaiting this information." AR 31.

Plaintiff submitted two letters in response. In the first, dated February 28, 2020, Plaintiff explained that he had "not worked for any shop . . . associated with [the] electrical industry" since 1990, and that he had "never owned or had any professional electrical licensing." AR 29. He indicated that he had "been self-employed" as a "one man shop getting involved in small carpentry and plumbing jobs," but that he was "officially fully retired" as of February 5, 2020. AR 29. Plaintiff sent a second letter dated April 23, 2020, in which he repeated that he has never had "any professional licensing in the field associated with an electrical industry" and that he has not

---

[2] IST Cooper also requested that Plaintiff submit a "letter on company letterhead from North Shore Towers, confirming [his] last day of employment." AR 31. North Shore Towers provided a letter on February 24, 2020, confirming that Plaintiff was employed there until June 1990. AR 19.

"work[ed] within [any] locally or nationally affiliated electrical industry shop under [IBEW] jurisdiction since July of 1990." AR 28.

IST Cooper again determined that Plaintiff was ineligible for pension benefits, explaining in a letter dated August 21, 2020 that he found Plaintiff's "current employment" to be "representative of work performed by IBEW electrical workers." AR 26. As such, Plaintiff remained ineligible for benefits under Article XI, Section 6(d) of the IBEW Constitution—the same provision cited in IST Cooper's denial of Plaintiff's first application. AR 26. To reach this determination, IST Cooper considered "Plaintiff's membership records," "his application for benefits," "letters from Plaintiff and his former employer," and "copies and reports of Plaintiff's professional licenses." Cooper Aff. ¶ 25. IST Cooper again considered the fact that Plaintiff held "Heating, Piping & Cooling" and "Plumbing & Piping" licenses; based on his personal knowledge and experience, IST Cooper concluded that mechanical contractors with such credentials "perform[ ] work that falls under IBEW's jurisdiction." *Id.* ¶ 26. IST Cooper's letter denying Plaintiff's second application notified him that he had a right to appeal the denial in writing to the IEC and to submit to the IEC "any supporting documents you feel are pertinent to your claim." AR 26.

Plaintiff appealed IST Cooper's second denial on September 11, 2020. AR 18. In support of his appeal, he submitted "a copy of the letter from North Shore Towers," and "copies of [his] job related licensing being not in use since February 20, 1992." AR 18, 19, 22, 23. One license is a New York "Certificate of Qualification for Refrigerating System Operator," which was issued in 1992 and expired in 1994. AR 22. The second license is for "Heating Cooling Unlmtd Contractor – S1" in Connecticut which expired in 1993. AR 23. Plaintiff also submitted a letter

6

from the Social Security Administration ("SSA") indicating that he had been entitled to Social Security benefits since February 2020.  AR 20–21.

On December 2, 2020, IST Cooper notified Plaintiff that his appeal would be considered by the IEC at its meeting on December 14, 2020.  AR 14.  IST Cooper advised that if Plaintiff "wish[ed] to present" any "additional documentation," he must submit it by December 7, 2020. AR 14.  Plaintiff did not submit any additional records.  Cooper Aff. ¶ 30.

In a letter dated on January 8, 2021, the IEC denied Plaintiff's appeal.  AR 7–8.  The IEC's denial noted that "[p]ublic records" showed that Plaintiff "continue[d] to operate as Plumbing & Piping Unlimited Contractor, a mechanical contractor registered and performing work in the state of Connecticut."  AR 7.  According to the IEC, Plaintiff's "credentials" in that position were "listed as performing work related to heating, plumbing, piping, and cooling, all of which require electrical installations and connections."  AR 7.  Based on this information, the IEC concluded that Plaintiff's "ownership of and the work performed by Plumbing & Piping Unlimited falls within the jurisdiction of the IBEW," rendering him ineligible for a pension under Article XI, Section 6(d) of the IBEW Constitution, which prohibits pension benefits for those "perform[ing] work of *any kind* coming under [IBEW's] jurisdiction either for compensation *or gratis* for anyone."  AR 7 (emphases added).  The IEC indicated that Plaintiff's continued "engage[ment]" in such work rendered him ineligible for pension benefits.

### C. Procedural History

Following the denial of his appeal to the IEC, Plaintiff filed a complaint in the Superior Court of the District of Columbia on April 1, 2021.  *See* Compl.  In his complaint, Plaintiff alleges that IBEW has improperly failed to pay him a pension benefit to which he is entitled.  *Id.* at 3.  He claims that he is "eligible for a full pension by IBEW," and that he paid required dues to IBEW.

*Id.* He alleges, however, that IBEW "refus[ed]" to pay his monthly pension amount on the basis that he must "surrender [his professional license[.]" *Id.* Plaintiff further claims that he was "fraudulently misled and denied [pension] benefits" by IBEW on the basis that his plumbing and mechanical licenses violated "[electrical] union charter and contracts." *Id.* Plaintiff claims that he is due $3,937.50 for monthly pension payments from March 2019 through March 2021. *Id.* He also seeks damages of $6,062.50 "due to the fraudulent misrepresentation." *Id.*

After receiving Plaintiff's initial pleading on May 3, 2021, Defendant removed the case to this Court on June 1, 2021. *See* Not. of Removal ¶¶ 2–3, ECF No. 1. IBEW's removal was based on this Court's federal question jurisdiction, as "[t]he [Complaint] seeks pension benefit payments and damages from the IBEW's [PBF], a pension benefit plan governed by the Employee Retirement Income Security Act of 1974" ("ERISA"). *Id.* at ¶ 4. According to Defendant, "[Plaintiff's] claim constitutes a claim for benefits allegedly due Plaintiff under ERISA under the terms of the IBEW's Pension Benefit Fund pursuant to Section 502(a)(1)(B) of ERISA and, as such, presents a federal question over which the District Court has original jurisdiction pursuant to 29 U.S.C. § 1331 and § 1337." *Id.*

Defendant IBEW on behalf of itself and PBF has now moved for summary judgment. Def.'s S.J. Mot. at 1. As discussed in greater detail, *infra* Section III, Defendant argues that its denial of pension benefits to Plaintiff is entitled to deference and should be affirmed because the IEC reasonably concluded that Plaintiff was engaged in work coming within IBEW's jurisdiction, which precludes his eligibility. *Id.* at 9–11. Additionally, Defendant argues that "Plaintiff's claim for fraudulent misrepresentation . . . is preempted by ERISA[.]" *Id.* at 12–13.

Plaintiff opposes Defendant's motion. Plaintiff argues that the IEC erroneously denied his pension benefit and failed to "support" its "allegation[ ] that Plaintiff's work in [the] mechanical

and plumbing field[s] was in any way connected to electrical work under IBEW jurisdiction." Pl.'s Opp'n at 4–5. Plaintiff has submitted additional documents in support of his claim that his pension was erroneously denied. *See* Pl.'s Notice, ECF No. 13; Pl.'s Notice of Add'l Ex., ECF No. 16. Although some of these documents are contained in the administrative record, several are not. These additional documents include, for example, "samples of proposal for work to be performed" by Plaintiff as an independent contractor, "a labor agreement between North Shore Apartments Incorporated and IBEW Local Union No. 3 covering the period May 1, 1998, to April 30, 2001[,]" and "permits issued to Mr. Ljubicic and his wife[.]" *See* Pl.'s Notice at 19–33; Pl.'s Notice of Add'l Ex. at 3–4. Plaintiff indicates that the "permits" are for a new home that he is building. *See* Pl's Notice of Add'l Ex. at 1. He indicates that he maintains his mechanical and plumbing licenses to "complete" this project. *Id.* These documents were not submitted to IST Cooper or to the IEC at the time Plaintiff's pension application and appeal were considered. *See* Cooper Aff. ¶ 32.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record-including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence-in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

### A. Denial of Pension Benefits Under ERISA

Defendant argues that Plaintiff's Complaint alleges a claim arising under ERISA because Plaintiff seeks a benefit under IBEW's pension benefit plan, which is a "union-dues financed 'employee pension benefit fund,' as defined [in] Section 3(2) of ERISA." Def.'s S.J. Mot. at 2 ¶ 3. Plaintiff does not object to this characterization of his claim. *See, e.g.*, Pl.'s Answer to Not. of Removal at 1, ECF No. 7 (recognizing that his claim is "covered" by "Federal Statutes"). Because he brings this action to "recover benefits due to him under the terms of his plan," his claim plainly arises under ERISA. 29 U.S.C. § 1132(a)(1)(B).

Under ERISA, a beneficiary of a covered plan may sue to "recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under § 1132(a)(1)(B) must be reviewed under a *de novo* standard *unless* the benefit

plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (emphasis added). Where the benefits plan grants the administrator or fiduciary "discretionary authority" to determine eligibility, the Court employs a "deferential standard of review," assessing whether the decision to deny benefits was reasonable. *Chipman v. Cigna Behavioral Health*, 480 F. Supp. 3d 174, 180 (D.D.C. 2020) (citing *Firestone Tire*, 489 U.S. at 115; *Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1454 (D.C. Cir. 1992)).

Here, the PBF Plan Summary explicitly grants the IEC "discretionary authority to determine eligibility for benefits." JA Doc. 6, PBF Summary Plan Description at 12; *see also Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 699 F. Supp. 2d 185, 200 (D.D.C. 2010) (reviewing plan's description as an "important component of benefit plans" under ERISA, which requires that a "Plan Description be created and provided to participants in the plan by employers"). This language tracks Article XI of the IBEW Constitution, which assigns to the IEC "discretionary authority to determine eligibility for benefits and the decisions of the I.E.C. on all questions arising hereunder, including cases of eligibility for, and computation of the amount of, benefits shall be final and binding." JA Doc. 2, IBEW Const. Article XI Pension Benefit Fund § 6(h). Based on the discretion assigned to the IEC to determine eligibility for pension benefits, the Court employs the more deferential standard of review—assessing whether IBEW's denial was "reasonable." Plaintiff does not dispute that this is the proper standard.

The Court next considers whether or not the underlying decision to deny Plaintiff benefits was "reasonable." "A decision will be found to be reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Buford v. UNUM Life Ins. Co. of Am.*, 290 F. Supp. 2d 92, 100 (D.D.C. 2003). In reviewing the underlying decision, the

11

Court may consider *only* "the record available to the administrator or fiduciary at the time the decision was made." *Chipman*, 480 F. Supp. 3d at 181 (quoting *Boster v. Reliance Standard Life Ins. Co.*, 959 F. Supp. 2d 9, 23 (D.D.C. 2013)); *see also Block*, 952 F.2d at 1455 ("Courts review ERISA-plan benefit decisions on the evidence presented to the plan administrators, not on a record later made in another forum.").

Here, the Court finds that Defendant's decision was reasonable based on the information available to the IEC at the time it assessed Plaintiff's eligibility for a pension. The record before the IEC established that Plaintiff had been receiving Social Security benefits since February 2020, and therefore was no longer formally "employed." However, Plaintiff maintained licenses related to his work as a mechanical contractor—work that the IEC determined fell within IBEW's jurisdiction. Because the IBEW Constitution precludes eligibility for those performing "any work of any kind coming under IBEW's jurisdiction," including work performed "*for gratis for anyone*," it was reasonable for the IEC to conclude that Plaintiff continued to perform work that made him ineligible for a pension. JA Doc. 2, IBEW Const. Article XI Pension Benefit Fund § 6(d) (emphasis added).

Plaintiff relies on materials submitted either to the IEC or to the Court *after* the IEC rendered its decision on his appeal to show that his work as an independent mechanical contractor did not involve "electrical" work and that he maintained his professional licenses to obtain work permits for the construction of his own home. *See, e.g.*, AR 1 (letter to IEC dated February 23, 2021); Pl.'s Opp'n at 2; Pl.'s Notice of Add'l Ex. He indicates that, for his own personal construction project, he would have hired electricians to complete the electrical work. *See* Pl.'s Notice of Add'l Ex. However, information about Plaintiff's own personal reason for maintaining his professional licenses was not provided to the IEC before it rendered its decision. Nor were

documents purporting to demonstrate that, even as a mechanical contractor, he did not perform work within IBEW's jurisdiction.[3] Therefore, based on the record before the IEC, the Court concludes that it reasonably determined that Plaintiff was ineligible for pension benefits.

### B. Fraudulent Misrepresentation Claim

In addition to challenging the IEC's determination that he was not eligible for a pension, Plaintiff alleges that IBEW "fraudulently" stated that his plumbing and mechanical licenses "violate the electrical union charter and contracts." Compl. at 3. He also claims that IBEW gave misleading advice as Plaintiff navigated the process of applying for pension benefits. *Id.* Though not entirely clear, Plaintiff appears to allege that he was "misled" into believing that he would be eligible for a pension benefit by paying his dues—which has not turned out to be the case. *See* Pl.'s Opp'n at 4. Under either theory, Plaintiff's fraudulent misrepresentation claim cannot proceed.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law "relates to" an employee benefit plan if it "has a connection with or reference to such a plan." *Soland v. George Wash. Univ.*, 916 F. Supp. 2d 33, 41 (D.D.C. 2013). As the Supreme Court has explained, ERISA's preemption provision is "deliberately expansive" to make "pension plan regulation . . . exclusively a federal concern." *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1987) (internal citation and quotation marks omitted). Here, Plaintiff's claim for fraudulent misrepresentation "relates to and is linked" with the IBEW's pension benefit plan. *Soland*, 916 F. Supp. 2d at 41. Plaintiff's

---

[3] IBEW contends that even if these materials had been provided to the IEC, they would have supported its decision to deny Plaintiff benefits. For example, Plaintiff has submitted work proposals representative of his work as an independent mechanical contractor, which include the "installation of a hydro air system, thermostats, subbase gas-fired boilers, and other HVAC equipment." Def.'s S.J. Mot. at 11. According to IBEW, such work is "routinely performed by IBEW members and is taught to wireman apprentices in IBEW apprenticeship programs nationwide." *Id.*; *see also* Cooper Aff.

allegations of IBEW's "fraud" derive from his claim that he was wrongfully denied a pension benefit. *See, e.g.*, Pl.'s Opp'n at 4 ("Why would anyone choose to pay the dues . . . if they will not be eligible for those benefits."). In other words, these claims rely on the existence of—and PBF's alleged duties under—IBEW's pension benefit plan. Such claims are preempted by ERISA. *See, e.g., Olivo v. Elky*, 646 F. Supp. 2d 95, 101 (D.D.C. 2009) (ERISA preempts state common law claim where "wrongdoing is alleged by Plan personnel in the course of administering the Plan"); *Krooth & Altman v. N. Am. Life Assur. Co.*, 134 F. Supp. 2d 96, 101–02 (D.D.C. 2001) ( ERISA preempted state law claims for fraudulent inducement and misrepresentation).

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. This case shall be dismissed. As separate Order accompanies this Memorandum Opinion.

                                                /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge

Date: August 2, 2022